CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 2 3 2006

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

PAULETTE NEWBY,
for M.A.J.,
        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
        Defendant.

Civil Action No. 7:05cv253

By: Hon. Michael F. Urbanski
United States Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Paulette Newby ("Newby"), the mother of a minor child, brought this action pursuant to 42 U.S.C. § 1383(c)(3), incorporating 42 U.S.C. § 405(g), for a review of the final decision of the Commissioner of Social Security denying the claim for child's supplemental security income ("SSI") under Title XVI of the Social Security Act. This case was referred to the undersigned Magistrate Judge on September 12, 2005 for report and recommendation. Oral argument was held on January 13, 2006. Having reviewed the record and after briefing and oral argument, the case is now ripe for decision.

Newby claims disability for her child since his birth due to asthma and a bone disorder, which has caused him to suffer numerous broken bones. (Administrative Record, hereinafter "R." at 67) Newby disputes the administrative law judge's ("ALJ") finding that the limitations resulting from his impairments do not meet or functionally equal the criteria of any listed impairment. (R. 23)

Newby raises two arguments in support of her appeal. First, Newby contends that the opinion of Dr. Tamez, a treating pulmonologist, supports a finding that the asthma Listing,

103.03, is met. Second, Newby argues that her son's asthma, combined with a brittle bone condition known as ostagenesis imperfecta, compels a finding of disability.

## I.

Substantial evidence supports the ALJ's conclusion that Listing 103.03 was not met. The asthma Listing, 103.03, contains very specific requirements. Section 103.03A requires evidence of certain forced expiratory volume (FEV-1) values. Newby argues that this section is met by evidence of one FEV-1 value within the range contemplated by Listing 103.3A. (R. 222) The problem with Newby's argument is that this lone FEV-1 value was obtained at the time of her son's initial visit with the pulmonologist and prior to the progress made by him under the treatment and medications prescribed. Indeed, the record reflects FEV-1 values obtained two (2) months later well above the Listing level. (R. 209-10) The case law is well settled that a condition which can be reasonable controlled with medication or treatment is not considered disabling. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Moreover, evidence as to Newby's son's FEV-1 levels was expressly considered by the medical expert, Dr. Hayden Alexander, who testified at the administrative hearing. As Dr. Alexander explained, while Newby's son's FEV-1 level before treatments met the Listing, after inhaler treatment "he no longer met the listing." (R. 42) Dr. Alexander's testimony that Newby's son's condition does not meet or equal Listing 103.03A constitutes substantial evidence supporting the ALJ's decision. (R. 421)

There is no credible suggestion that the specific requirements of Listing 103.03B-D are met. Listing 103.03B requires attacks during specified intervals, in spite of prescribed treatment, requiring physician intervention. Review of the medical records does not indicate that Newby's

2

Case 7:05-cv-00253-JCT-mfu   Document 18   Filed 01/23/06   Page 2 of 12   Pageid#: 69

son had such attacks at the specified intervals. In order to meet Listing 103.03C, the record must reflect that there was persistent low-grade wheezing between acute attacks or the absence of symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators, along with either persistent prolonged expiration with radiographic or other appropriate imaging techniques evidence of pulmonary hyperinflation or peribronchial disease; or short courses of corticosteriods that average more than five (5) days per month for at least three (3) months during a twelve (12) month period. Again, the evidence does not support a finding that Newby's son's condition falls within these specific parameters. Finally, there is no suggestion that 103.03D, requiring evidence of growth impairment, is met. In short, the medical records do not support a finding that Newby's son's condition meets the specific, detailed requirements of Listing 103.03B-D.

Newby also argues that the ALJ erred by not crediting the opinion of her son's treating physician, Dr. Joseph Tamez. At page 262 of the record, Dr. Tamez responds to a request by counsel for plaintiff by indicating that Listing 103.03 is met. Dr. Tamez's conclusory response to this request is dated November 25, 2003. In support of this opinion, Dr. Tamez lists only the following objective finding: "moderate to severe persistent asthma." (R. 262) The problem, of course, is that this unexplained notation does not come close to meeting the specific requirements of the Listing. Dr. Tamez cites no clinical evidence to confirm his conclusion that the Listing was met.

In that regard, it is instructive to contrast Dr. Tamez's response to counsel's inquiry dated November 25, 2003, (R. 262), with his written opinion one month earlier, on October 31, 2003. On that date, Dr. Tamez wrote that "I consider him to be mildly to moderately limited in capacity

3

to participate in physical activity." Id. Further, in this letter, Dr. Tamez declined to complete a Childhood Disability Evaluation Form for Newby's son, stating that "I am not qualified to fill this out as I do not perform regular developmental assessment for [him]." Id.

In contrast to the conclusory statement of Dr. Tamez in November, 2003 that the Listing was met, the ALJ relied upon the specific testimony of Dr. Hayden Alexander, who assessed Newby's son's medical history in light of the specific requirements of Listing 103.03 and found no section of that Listing to be met. In that regard, Dr. Alexander explained that subsections A and B were not met because the FEV-1 values were outside of the Listing level (103.03A) and because the incidence of his attacks were too few to meet subsection B. Likewise, Dr. Alexander found no clinical evidence to support persistent low grade wheezing necessary to meet Listing 103.03C. Finally, Dr. Alexander noted that no significant growth impairment (103.03D) is mentioned in the medical records. (R. 420-21)

Newby argues that the ALJ erred by relying on the opinion of Dr. Alexander instead of the opinion of the treating physician, Dr. Tamez, relying on Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986), and Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983), and the factors set forth in § 404.1527(d) and § 416.927(d). While these cases and the regulations require that the opinions of treating physicians be accorded great weight and disregarded only in the face of persuasive contradictory evidence, this precedent and regulatory scheme do not require the Commissioner to credit conclusory opinions which are not supported by the clinical evidence. The medical records paint a clear picture of the nature and severity of Newby's son's asthma, which are consistent with the opinion of Dr. Alexander and constitute persuasive contradictory evidence to the conclusory opinion of Dr. Tamez.

4

Newby argues that the answers to interrogatories provided by Dr. Alexander, the medical expert, suggest that he only analyzed one section of the Listing, 103.03C. Newby's argument ignores the text of the interrogatory response. In answer to Interrogatory 3, Dr. Alexander states that Newby's son does not meet or equal the Listing based on "testimony at the hearing and answers in item 9 that follows." (R. 352) At the hearing, Dr. Alexander testified that Newby's son did not meet any of the subparts of Listing 103.03. In Interrogatory 9, Dr. Alexander addressed certain new medical information provided after the hearing under 103.03C. Thus, contrary to plaintiff's argument, in his oral testimony and interrogatory answers, Dr. Alexander considers all parts of Listing 103.03.

At the hearing, plaintiff argued that Dr. Alexander did not consider certain additional medical records relating to hospitalization and treatment for asthma or broken bones, but does not point to anything in these records which demonstrates that any of the subparts of Listing 103.03 are met. As such, plaintiff has not met her burden of proving disability. Further, all of these records predate the evaluation by Newby's son's treating physician, Dr. Althouse, assessing Newby's son's impairments at a level short of that required for disability. (R. 385) See 20 C.F.R. § 416.926a.

Given this record, including the opinion of Dr. Tamez in October, 2003, that Newby's son had a mild to moderate limitation, there is no requirement that the ALJ recontact Dr. Tamez to seek clarification of his November, 2003 opinion. While SSR 96-5p requires the adjudicator to make "every reasonable effort" to recontact a treating source where the evidence does not support a treating source's opinion on any issue reserved to the Commissioner, such further efforts are only required where "the adjudicator cannot ascertain the basis of the opinion from the

5

case record." SSR 96-5p. Likewise, 20 C.F.R. § 404.1512(e) and § 416.912(e) require the Commissioner to recontact medical sources only when the evidence "is inadequate for us to determine whether you are disabled." Clearly, that is not the case here as both in October and November, 2003, Dr. Tamez provided the basis for his opinion and the medical records clearly establish that the specific requirements of Listing 103.03 are not met.

## II.

Newby's son also suffers from osteogenesis imperfecta, a condition which causes him to suffer broken bones with minimal trauma. Newby argues that from November, 1998 through July, 2003, her son suffered ten broken bones. This bone condition, she argues, when taken in combination with his severe asthma, compels a finding of disability. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).

Newby's argument ignores the framework for assessing childhood disability set forth in the Social Security Act and regulations. Under the Act, a child under the age of eighteen is considered to be "disabled" for purposes of eligibility for a child's SSI if he has a medically determinable physical or mental impairment which results in marked and severe functional limitation, and which has lasted or can be expected to last for a continuous period of at least twelve (12) months, or results in death. 42 U.S.C. § 1382(a)(3)(C)(I). In determining whether a child is eligible for child's SSI on the basis of disability, a three-step sequential evaluation process is followed. 20 C.F.R. § 416.924.

First, it must be determined whether the child is engaging in substantial gainful activity. 20 C.F.R. § 416.924(b). If not, it must then be determined whether the child suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.924(c). If the child suffers

6

from a severe impairment or combination of impairments, it must then be determined whether the child's impairment meets, medically equals, or functionally equals an impairment listed in the Listing of Impairments at 20 C.F.R. pt. 404, subpt. P, app. 1. 20 C.F.R. § 416.924(d).

Functional equivalence is defined as an impairment of listing-level severity; for example, it must result in "marked" limitations in two domains of functioning, or result in an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). There are six domains of functioning assessed in determining functional equivalence: (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) ability to care for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

In the present case, the ALJ correctly followed the three-step sequential evaluation process. There is no issue as regards steps one and two, as Newby's son has not engaged in substantial gainful activity and suffers from osteogenesis imperfecta and asthma which were determined by the ALJ to be "severe" impairments.

As regards step 3, the ALJ found that Newby's son did not have the severity or frequency of asthma attacks contemplated by Listing 103.03 and did not meet or medically equal a Listing for his bone fractures. The ALJ noted that Newby's son sustained several fractures, however, they healed on a timely basis and did not meet or medically equal the requirements of any musculoskeletal impairment as set forth in Listing 101.00. (R. 19)

The ALJ next considered the issue of functional equivalence to a Listing, employing the six (6) domains of functioning. The domains relevant to Newby's son's impairments of asthma and osteogenesis imperfecta are "Moving About and Manipulating Objects" and "Health and

7

Physical Well-Being." A rating of "marked" limitation in a domain area is appropriate when an impairment seriously interferes with a child's ability to independently initiate, sustain, or complete activities. A "marked" rating is more than moderate, but less than extreme. 20 C.F.R. § 416.926a(e)(2). Hence, to establish a marked limitation, the evidence must show serious interference or more than a moderate limitation.

Based on the record evidence, the ALJ concluded that Newby's son did not have serious interference or more than a moderate limitation in any domain. Over a three-year period, Newby's son had a handful of acute asthma exacerbations. (R. 157-60, 278, 299, 313-14, 329-39) However, Newby's son recovered after receiving treatment, and had no lingering effects or limitations on his functioning. He had only one overnight hospital stay related to asthma. (R. 157-60)

School developmental assessments show that Newby's son participated in competitive play activities and no limitations were noted due to asthma. (R. 148-50) Further, Newby's mother reported that her son played outside daily – at school, on the playground, and at home – "running, jumping, typical child's play," and he only needed a breathing treatment after "playing too hard." (R. 91, 95) Moreover, the school nurse school reported that Newby's son's asthma was controlled by means of a nebulizer and medication, and that he did not frequently miss school due to illness. (R. 125)

At his five-year well child exam, the pediatrician noted that Newby's son was "doing very well" with "normal growth and development." (R. 231) As regards his breathing, the physical exam revealed "normal respiratory effort, sl. scattered wheezes." (R. 231). Likewise, when first seen by Dr. Tamez in June 2003, the physical examination revealed "mild scattered wheeze, fair

8

aeration." (R. 216) Nor do other records from Dr. Tamez demonstrate any more than moderate, or "less than marked" limitation of functioning. Certainly, Newby's son's asthma required frequent treatment, and on limited occasions became acute. The record does not suggest that the asthma affected his overall health and well-being in any serious or disabling way.

With respect to the bone disorder, the record establishes, much like his asthma, that there were some "acute" occasions when sustained a fracture and had to wear a cast or splint for a few weeks, but then he healed and recovered with no lasting effect on his ability to use his arms, legs, or feet. A March, 2002, school developmental assessment noted that Newby's son "participates in competitive play activities." (R. 149) This report also noted:

> [He] throws a ball 5 feet forward with direction, turns a forward somersault without assistance, imitates arm positions of the examiner, jumps with both feet together and catches a ball. He walks up stairs alternating his feet and down stairs marking time. Mrs. Newby reports that [he] has begun to alternate his feet walking down the stairs at their apartment which indicates that his skill is emerging. He does not hop forward on one foot without support, or walk heel-to-toe for four or more steps. The broken legs that he has experience does not appear to have significantly affected his gross motor development.

(R. 149)

A report from the school nurse stated that she observed no problems with moving about and manipulating objects and that his functioning appeared to be age-appropriate. (R. 123) Newby described her son's activities outside the home in 2003 as "[p]laying at school, and the playground here at home. Running, jumping; typical child's play." (R. 91)

Likewise, despite his bone condition, Newby's son's treating doctors felt he did not place any serious restrictions on his level of activity. In July, 2001, his pediatrician described him as a

9

"playful, active boy," and in March, 2002, stated that he was "doing very well." (R. 182, 192) Dr. Novak, an orthopedist, noted in July, 2002, after removing the cast on the left forearm, that Newby's son appeared to be "doing just fine" and that no further intervention was necessary. (R. 256)

Again, at his five-year checkup in May, 2003, Dr. Althouse, claimant's pediatrician, noted that he had "normal growth and development" and a "normal gait." (R. 231) Dr. Tamez noted in August, 2003 that M.A.J. had normal muscle tone and strength, with no evidence of wasting; and he had no pain in his bones or joints. (R. 205) As of November, 2003, the only physical restriction placed on Newby's son was that of Dr. Wagstaff, who stated that he was not to participate in contact sports, such as football. (R. 251, 342)

Finally, the opinions of state agency reviewing physician, Dr. Duckwall, and medical expert, Dr. Alexander, support the ALJ's domain ratings in the assessment of functional equivalence. (R. 163-65, 419-27)

The Broad Functional Limitations Assessment completed by Newby's son's treating pediatrician, Dr. Douglas Althouse,[1] confirms the ALJ's decision. This assessment, provided to the Appeals Council by counsel for plaintiff, reflects no extreme degrees of limitation and provides a marked degree of limitation in only one domain. In the motor domain, Dr. Althouse explained his marked assessment as follows: "due to moderate persistent asthma and osteogenesis imperfecta variant – he has had numerous fractures and is at high risk for such." (R. 385) As the regulations require an extreme degree of limitation in one domain or marked

---

[1] Dr. Althouse saw Newby's son over the longest period of time, and was present at his birth. (R. 224-49)

degrees of limitation in two or more domains, the requisite degree of limitations required by the regulations to establish an impairment or combination of impairments that functionally equal the Listings is not present. 20 C.F.R. § 416.926a.

In all, the ALJ's determination that there were insufficient limitations in the various domains required for a finding of disability is amply supported. Certainly, Newby's son has two medical conditions which affect his daily life; however, it is clear that substantial evidence exists to support the ALJ's findings and conclusion that claimant did not meet the required criteria for disability. As such, it matters not whether the court would have decided this case differently. It is not the function of the court to substitute its judgment for that of the Commissioner. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Where, as here, the decision of the Commissioner is supported by substantial evidence, it must be affirmed. Id.

## CONCLUSION

In making this recommendation, the undersigned does not suggest that Newby's son is totally free of all medical complaints. Certainly, he is not. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. It is recommended, therefore, that defendant's motion for summary judgment be granted.

The Clerk is directed immediately to transmit the record in this case to the Hon. James C. Turk, Senior United States District Judge. Both sides are reminded that pursuant to Rule 72(b)

11

they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTER: This 23rd day of January, 2006.

Michael F. Urbanski
United States Magistrate Judge